UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN LOWERY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AVENUE 8 HOLDING LTD, et al.,<br><br>　　　　Defendants. | Case No.  24-cv-03107-AGT<br><br>**ORDER ON MOTIONS TO EXCLUDE**<br>Re: Dkt. Nos. 30, 42, 43 |

Plaintiff Adrian Lowery (Plaintiff) moves to exclude Arthur Faherty as an expert for defendants Avenue 8 Holding Limited and Giulia Shipping Limited (together, Defendants). Dkt. 30. Defendants oppose, dkt. 36, and move in turn to exclude Plaintiff's experts Captain Katharine Sweeney and Fred Gilliam. Dkts. 42 & 43. Plaintiff opposes. Dkts. 44 & 45. Having reviewed the papers and after oral argument, the Court now denies the motion to exclude Faherty without prejudice to raising these issues, if appropriate, by motions *in limine* or at trial. Defendants' motions to exclude Sweeney and Gilliam are denied in part without prejudice and granted in part.

## I.　　Motion to Exclude Captain Katharine Sweeney

### A.　Sweeney Is Qualified to Testify

Defendants argue that Captain Katharine Sweeney is not qualified to testify under Federal Rule of Evidence 702. Dkt. 43. Plaintiff disagrees. Dkt. 45.

Rule 702 "contemplates a broad conception of expert qualifications," which may be

obtained through "knowledge, skill, experience, training, or education." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994). "In *Daubert* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony." Fed. R. Evid. 702 Adv. Comm. Notes, 2000 Am. (citing *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993)). "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Adv. Comm. Notes, 2000 Am. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Sweeney has approximately twenty years as an officer on a variety of different vessels, and, since 2009, has gained experience as an auditor. Dkt. 43-6. She is qualified to testify as to customs and practices in the long-shoring industry.

Defendants argue that Sweeney's experience took place twenty years ago, that she lacks experience on foreign-flagged vessels, and that she has limited stevedore experience. Dkt. 43 at 8–9.[1] But Defendants don't explain why any of that matters. They don't argue, for example, that the customs relevant here differ on foreign-flagged and domestic vessels. *Cf. Palmer v. Nippon Yusen Kabushiki Kaisha (NYK Line)*, No. 24-CV-00309-DMR, 2025 WL 2781314, at *8 (N.D. Cal. Sept. 29, 2025) (excluding Sweeney's testimony where the relevant procedures differed). They don't argue that the relevant policies have changed in the past two decades, nor do they show why stevedore experience is needed here. *See* dkt. 45 (opposition) at 7–8 (arguing same).

Next, Defendants assert that Sweeney lacks facts and a reliable method on which to

---

[1] References to page numbers correspond to the ECF page numbers at the top of each page.

base her opinion. She didn't visit the vessel, take any measurements, or review the mainte-nance schedule, for example. Dkt. 43 at 10–11. Nor did she offer a discernable methodology. *Id.* at 12. Plaintiff responds that Sweeney's opinions are based on her experience and knowledge of industry standards, and documentary evidence of the incident. Dkt. 45 at 11–12. In that case, methods, measurements and tests of the sort described by Defendants wouldn't inform her opinions any further. *Id.* The Court agrees with Plaintiff. Here, "[v]ig-orous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [is the] appropriate means of attacking," *Daubert*, 509 U.S. at 596, the bases for Sweeney's opinions.

Finally, Defendants argue that Sweeney didn't consider reasonably available alter-natives. Dkt. 43 at 16–17. But Defendants don't explain which reasonably available alterna-tives Sweeney should have considered (but didn't). Without more, this argument is not per-suasive. Furthermore, as Plaintiff points out, dkt. 45 at 13, Sweeney did consider an alterna-tive theory. Sweeney Depo., Vol. III, 25:13–26:2.

### B.  Sweeney's Testimony Is Reliable, Except as to Human Factors

Next, Defendants contend that Sweeney's testimony is not reliable: she cannot testify as to the design error, human factors analysis, the credibility of witnesses, or issues of law. Dkt. 43 at 15–19.

Plaintiff first responds that Sweeney is not offered as a human factors or design de-fect expert, and her opinions and testimony don't indicate otherwise. Dkt. 45 at 14–15. Re-garding design, the Court agrees with Plaintiff. Defendants haven't shown that Sweeney is opining on design beyond her expertise. Instead, Defendants may again test Sweeney's

opinions by cross-examination and contrary evidence.[2]

However, regarding human factors, the Court agrees with Defendants. "Human Factors is concerned with the application of what we know about people, their abilities, characteristics, and limitations to the design of equipment they use, environments in which they function, and jobs they perform." *Padula v. Carnival Corp.*, No. 16-23862-CIV, 2017 WL 7792714, at *5 (S.D. Fla. Oct. 13, 2017). Where an expert lacks expertise in human factors, courts have found that expert "not qualified to offer expert opinions regarding what Plaintiff, or some other reasonable person, would have seen and how they would have reacted to it." *Id.*

Here, Sweeney's second opinion reads, "[c]rew should recognize this unreasonable risk to longshore workers." Dkt. 43-6 at 6. And her third opinion is that, "[c]rew should foresee experienced workers like Lowery not being able to detect the hidden danger." *Id.* The Court finds that these opinions cross over into human factors by opining on what a crew should or would have noticed. As noted above, Sweeney may testify as to industry customs and standards, but not as to "what [a crewmember], or some other reasonable person, would have seen and how they would have reacted to it." *Padula,* 2017 WL 7792714, at *5. As such, Sweeney's second and third opinions must be excluded. *See also Brown v. MSC Ship Mgmt., LTD.*, No. CV423-182, 2025 WL 1392147, at *7 (S.D. Ga. May 14, 2025) (excluding Sweeney's testimony regarding design and manufacture of a gangway, and on "what Plaintiff, or any longshoreman, would have noticed, or how different handrails would have prevented Plaintiff's fall"), *aff'd,* No. CV423-182, 2025 WL 1667380 (S.D. Ga. June 12, 2025).

---

[2] This is not a design defects case, and Plaintiff asserts that Sweeney's testimony is not offered for that purpose. Dkt. 45 at 15. The Court concludes that Sweeney is excluded from testifying on any design defect.

Next, as argued by Plaintiff, dkt. 45 at 16–18, Sweeney isn't testifying as to the credibility of any of Defendants' witnesses, nor should she.

Finally, regarding issues of law, Defendants argue that Sweeney impermissibly opines as to the duties that a shipowner owes to a longshoreperson. Dkt. 43 at 19. But Sweeney is qualified to testify to norms regarding turnover duty, and what the relevant rules and regulations state. Her opinion is not unreliable because it "embraces an ultimate issue to be decided by the trier of fact." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004). The Court won't exclude on this ground. *See id.* ("While Caliri's testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, Caliri never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).").[3]

## II.    Motion to Exclude Fred Gilliam

### A.  Gilliam Cannot Testify as to Existence of Defect

Plaintiff's expert Fred Gilliam's report reads, in relevant part, "[t]he latch on the rail was worn, creating a hidden defect that should have been recognized by the crew upon reasonable inspection before the ship was turned over to the longshoremen." Dkt. 42-2.

Defendants assert that Gilliam is unqualified to opine regarding the existence of a defect. Dkt. 42 at 5–7. Plaintiff agrees that Gilliam is not an expert on the alleged defect and is not offered as such. *See* dkt. 44 at 4 ("For clarity, Mr. Gillam is not offered as an expert on the existence of a defect itself . . . ."). Indeed, at the hearing, Plaintiff conceded that Gilliam "is not offered to testify on the design" and that Gilliam is "not qualified" to do so.

---

[3] Defendants' final ground to exclude Sweeney is that she cannot offer new opinions. Dkt. 43 at 20–21. But Defendants don't make clear in their motion what new opinions they are seeking to exclude. As such, the request is denied without prejudice.

Oral Argument at 42:33–52.[4]

Accordingly, Gilliam's testimony regarding the condition of the latch on the rail and any alleged defect must be excluded as unreliable.

### B.  Gilliam Does Not Opine on Singh's Credibility

Next, Gilliam's report continues, "Contrary to Mr. Singh's testimony, it is clear that the rail is to be used by both crewmembers and longshoremen to exit the hatch safely." Dkt. 42-2.

Taking the first clause of the sentence first, Defendants maintain that Gilliam is not qualified to comment as to Chief Mate Singh's credibility. Dkt. 42 at 8–9. Plaintiff responds that Gilliam's report contains no impermissible opinions regarding credibility. Dkt. 44 at 10. Instead, Gilliam merely notes his disagreement with Singh's testimony in his report. *Id.*

The Court agrees with Plaintiff that Gilliam's inclusion of "contrary to Mr. Singh's testimony," does not opine on Singh's credibility and need not be excluded on that basis. Gilliam may point out an area of disagreement with another expert. He may further present testimony that conflicts with Singh's testimony, assuming it complies with the Federal Rules of Evidence and *Daubert.* 509 U.S. at 579; *see Reed v. Lieurance*, 863 F.3d 1196, 1209 (9th Cir. 2017).

Relatedly, at Gilliam's deposition, this exchange occurred:

> Q. And with respect to your statement here, "It is clear that the rail is to be used by both crew members and longshoremen to exit the hatch safely," what do you base that statement on?
> A. I base that on Mr. Singh's testimony by him saying that -- he says in his testimony that he tells the superintendent to tell longshoremen not to use that, which I've never heard as 20 years of being a boss. And then he also says that he tells his crew members that work for

---

[4] Citations to argument in this order refer to time stamps from the audio recording of the Court's May 15, 2026, hearing. Upon request, the Court can provide access to the recording. Any such requests should be filed on the Court's docket.

> him not to use it. And I've seen them use it. And then also my experience of using it myself and other longshoremen using it.

Gilliam Depo. 75:13–76:8. *See also id.* 68:20–69:6. Defendants argue that Gilliam cannot properly opine on whether a statement was or was not made. Dkt. 42 at 4 & 9. As Plaintiff argues, Gilliam is not disputing whether Singh gave such a warning. Dkt. 44 at 10. Instead, Gilliam is explaining that such an instruction from Singh is contrary to Gilliam's understanding of customs and practice. *See id.* Again, it is permissible for Gilliam to present opinions contrary to Singh's. This is not a basis to exclude.

### C. Gilliam May Testify as to Industry Customs and Practices

Regarding the second part of the sentence ("it is clear that the rail is to be used by both crewmembers and longshoremen to exit the hatch safely"), Defendants first argue that Gilliam is unqualified to opine as to whether Plaintiff properly used a piece of the ship's equipment. Dkt. 42 at 5. Defendants assert that Gilliam's statement is based on his experience and, "that's how it's done," without more formal qualifications. *Id.* at 6.

Plaintiff responds that Giliam is qualified to testify based on his thirty-five years in the longshore industry, including twenty years as a walking boss and approximately ten as the president of the relevant union. Dkt. 44 at 2.

The Court agrees with Plaintiff. Gilliam has decades of experience in a range of longshoring positions, including twenty years as a walking boss. Gilliam is a former president of the walking bosses' union and formerly taught courses for new walking bosses. Gilliam's experience in the longshore field is sufficient to qualify Gilliam to testify as to its customs, standards, and practices. *See* Fed. R. Evid. 702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion . . ."); *Hangarter*, 373 F.3d at 1016 (concluding that decades of experience in

7

relevant industry is sufficient to satisfy the "minimal foundation of knowledge, skill, and experience required in order to give 'expert' testimony" as to practices and norms in that industry).

Next, Defendants argue that Gilliam's proffered opinion amounts to no more than *ipse dixit* and fails to demonstrate any methodology. Dkt. 42 at 7. The Court agrees with Plaintiff that this argument is not a reason to exclude. Dkt. 44 at 8. Gilliam was commenting on a work practice based on his work experience. *Id.; cf. Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156–57 (1999) (affirming exclusion where expert used unreliable methods to analyze a car tire's properties). Defendants can raise this argument regarding the persuasiveness of this opinion, if appropriate, at trial.[5],[6]

### III.    Motion to Exclude Arthur Faherty

#### A.  Faherty's Opinions Are Reliable and Helpful

Plaintiff moves to exclude Arthur Faherty's opinions as unreliable and lacking foundation. Dkt. 30. Defendants oppose, arguing that Faherty's opinions are based on his experience and knowledge of pertinent standards, and grounded in available documents. *E.g.*, dkt. 36 at 4–5. Faherty has decades of experience aboard vessels as a marine engineer, including five years as a chief engineer responsible for crew safety and thirty years as a consultant. Dkt. 31-1 at 21. The Court is not persuaded that Plaintiff's arguments require exclusion, instead of "[v]igorous cross-examination, presentation of contrary evidence, and

---

[5] Defendants again move to exclude any new opinions from Gilliam, but don't detail which specific opinions they are seeking to exclude on this basis. Dkt. 42 at 9–10. The request is therefore denied without prejudice.

[6] At the hearing, Defendants argued also that Gilliam and plaintiff Lowery have a personal relationship. Oral Argument at 32:38–33:15. As the Court noted in response, this issue goes to bias and is not a basis to exclude. *Id.* 33:47–58.

careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596.[7]

Plaintiff further argues that Faherty's opinions are not helpful. *See* dkt. 30. For example, a jury can understand the vessel's log without Faherty's testimony, and a jury can understand falling from a ladder. Dkt. 30 at 5 & 7. That may be true, but the Court finds that Faherty's opinion will be helpful to explain to a jury what the requirements for the log were, and how safety fencing is intended to be used, for example. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("Where . . . the nexus between the injury and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the accident and some item of physical or mental injury.") (cleaned up).

These are not bases on which the Court will exclude Faherty. He may testify to relevant industry policies, procedures, and customs.

### B. Faherty May Counter Plaintiff's Testimony

Plaintiff argues that Faherty cannot opine as to Plaintiff's credibility. Dkt. 30. Defendants agree that an expert may not directly opine on a witness's credibility. Dkt. 36 at 7. Instead, Faherty may highlight inconsistencies by comparing Plaintiff's account with industry standards, for example. *Id.* The Court here concurs with Defendants. As noted above, an expert witness such as Faherty may not directly comment on Plaintiff's credibility, but may counter Plaintiff's account, highlight inconsistencies, and present conflicting evidence.

More specifically, Plaintiff argues that Faherty may not opine on photo and video

---

[7] Plaintiff also argues that Faherty may not testify to ultimate issues of law, for example, whether a party was negligent or whether Plaintiff's allegations are supported. Dkt. 30 at 8–10. But the gravamen of his arguments goes to lack of foundation. So, for the reasons stated, this is an insufficient ground on which to exclude Faherty.

evidence. Dkt. 30 at 8. He isn't qualified, nor would the testimony be helpful. *Id.* Defendants respond that Faherty may review and discuss the photos and videos based on his expertise in maritime consulting and knowledge of safety protocols. Dkt. 36 at 8. Therefore, Faherty can opine that he didn't see credible evidence supporting Plaintiff's account of the event. *Id.* As found above, Faherty can testify based on his knowledge and experience, and may counter Plaintiff's account using Faherty's understanding of the photos and videos.[8]

## IV.    Conclusion

The pending motion to exclude Faherty is denied without prejudice. Defendants' motions to exclude Sweeney and Gilliam are denied in part without prejudice and granted in part.

This order dispenses with dkts. 30, 42, and 43.[9]

**IT IS SO ORDERED.**

Dated: May 18, 2026

Alex G. Tse
United States Magistrate Judge

---

[8] In their briefing, dkts. 30 at 8 & dkt. 36 at 8–10, and during the hearing, oral argument at 58:00–1:01:55, the parties disagreed regarding metadata in connection with photos. But Faherty did not rely on metadata in his report; he visually compared the images. *See* dkt. 31-1 at 16–18. So, the metadata issue is not presently before the Court, and the undersigned takes no position at present.

[9] The Court sua sponte sealed dkt. 31 after discovering that Plaintiff filed a document at dkt. 31-3 which included personally identifiable information. *See* Fed. R. Civ. P. 5.2(a). Plaintiff is ordered to refile redacted versions of the materials filed at dkt. 31 on the Court's public docket by May 29, 2026.